**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**SECURITIES AND EXCHANGE COMMISSION,**

                                    **Plaintiff,**

            **-- against --**

**AR CAPITAL, LLC, NICHOLAS S. SCHORSCH**
**and BRIAN S. BLOCK,**

                                    **Defendants.**

---

**19 Civ. 6603 (AT)**

**ECF Case**

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S**
**REPLY IN OPPOSITION TO NON-PARTY VEREIT, INC.'S OBJECTIONS AND**
**COMMENTS TO THE PROPOSED PLAN OF DISTRIBUTION**

Victor Suthammanont
Nancy A. Brown
Wendy B. Tepperman
U.S. Securities and Exchange Commission
200 Vesey Street, Suite 400
New York, NY 10281
(212) 336-5674 (Suthammanont)
suthammanontv@sec.gov

Nancy Chase Burton
Nichola L. Timmons
U.S. Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549-5631
 (202) 551-4425 (Burton)
burtonn@sec.gov

November 6, 2020

# TABLE OF CONTENTS

Table of Authorities ............................................................................................................. iii

Preliminary Statement ........................................................................................................ 1

Additional Background ....................................................................................................... 5

Argument ............................................................................................................................ 7

    I.       The Proposed Plan of Distribution Is Fair and Reasonable ........................................ 7

        A.     The Applicable Standard of Review Is Whether the Proposed
               Plan Is Fair and Reasonable and *Liu* Did Not Change It ....................................... 7

        B.     It Is Fair and Reasonable to Distribute the Fair Fund,
               Including Disgorgement, to the Investor Victims Specified
               in the Proposed Distribution Plan ........................................................................ 11

        C.     A Distribution of the Disgorgement Component of the
               Fair Fund to VEREIT Would Be Inequitable Under the Circumstances.............. 14

Conclusion ........................................................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**

*Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975) .................................................... 14

*In re Reserve Fund Securities & Derivative Litigation*, 673 F. Supp. 2d 182
  (S.D.N.Y. 2009) ........................................................................................................ 9

*Liu v. SEC*, 140 S. Ct. 1936 (2020).................................................................................. 3, 11, 20

*Official Committee of Unsecured Creditors of Worldcom, Inc. v. SEC*,
  467 F.3d 73 (2d Cir. 2006) ........................................................................... 2, 8, 9, 11

*SEC v. Amerindo Inv. Advisors*, 639 F. App'x 752 (2d Cir. 2016)................................ 9

*SEC v. Bivona*, No. 16 Civ. 1386, 2017 WL 4022485
  (N.D. Cal. Sept. 13, 2017) ...................................................................................... 16, 17

*SEC v. Brant*, No 07 Civ. 1075 (DLC) (S.D.N.Y.)..................................................... 20

*SEC v. Byers*, 637 F. Supp. 2d 166 (S.D.N.Y. 2009)........................................... passim

*SEC v. CR Intrinsic Investors, LLC*, 164 F. Supp. 3d 433
  (S.D.N.Y. 2016) ............................................................................................................. 9

*SEC v. Credit Bancorp, Ltd.*, 290 F.3d 80 (2d Cir. 2002) .................................... 17, 19

*SEC v. Credit Bancorp, Ltd.*, No. 99 Civ. 11395, 2000 WL 1752979
  (S.D.N.Y. Nov. 29, 2000) ..................................................................................... 16, 19

*SEC v. Drexel Burnham Lambert, Inc.,* 956 F. Supp. 503 (S.D.N.Y. 1997) .......... 4, 18

*SEC v. Felix Investments, LLC*, 16 Civ. 1386, 2018 WL 6706038
  (N.D. Cal. Dec. 20, 2018) ...................................................................................... 11

*SEC v. J.P. Morgan Securities LLC,* 266 F. Supp. 3d 225 (D.D.C. 2017) ............ 11, 15

*SEC v. J.P. Morgan Securities LLC*, No. 12 Civ. 1862, 2017 WL 44209
  (D.D.C. Jan. 4, 2017)................................................................................................ 10

*SEC v. Levine*, 991 F.2d 1165 (2d Cir. 1989) ...................................................... 8, 20

*SEC v. McGinn, Smith & Co., Inc.*, No. 10 Civ. 457, 2019 WL 1060650
  (S.D.N.Y. March 6, 2019) ........................................................................................ 9

*SEC v. Wang*, 944 F.2d 80 (2d Cir. 1991) .......................................................... passim

*SEC v. Worldcom, Inc.,* No. 02 Civ. 4963, 2004 WL 1621185
  (S.D.N.Y. July 20, 2004), ............................................................................................... 10, 14

*Witchko v. Schorsch*, No. 15-cv-6043 (AKH) (June 9, 2016) ................................................. 5, 18

**Statutes**

15 U.S.C. § 78m(b)(2)(A)............................................................................................................. 16

Plaintiff Securities and Exchange Commission (the "Commission" or "SEC") respectfully submits this reply in opposition to non-party VEREIT, Inc.'s ("VEREIT") Objections and Comments to the Commission's Proposed Plan of Distribution of Settlement Funds Paid by AR Capital, LLC, Nicholas S. Schorsch, and Brian S. Block ("Objections").

## PRELIMINARY STATEMENT

VEREIT is the same entity formerly known as American Realty Capital Properties, Inc., which changed its name in July 2015.[1] VEREIT entered into two mergers in 2013 and 2014 with affiliated entities that were the subject of the Commission's action in this matter against defendants AR Capital, LLC, Nicholas S. Schorsch ("Schorsch"), and Brian S. Block ("Block") (collectively, "Defendants"), who served as managers and officers of VEREIT and the two merging entities. (DE 42 at 1-4 (Mem. of Law in Support of Plaintiff Securities and Exchange Commission's Motion for an Order Approving a Distribution Plan for the Fair Fund).)

On September 14, 2020, the Commission filed a Motion for an Order Approving a Distribution Plan for the Fair Fund ("Motion for Approval"). (DE 41-42.) VEREIT filed its Objections on October 13, 2020. (DE 45.) No other parties filed objections or comments. The Fair Fund is comprised of approximately $34 million in disgorgement, prejudgment interest, and penalties paid by Defendants to settle the Commission's claims in this action, without admitting or denying the allegations in the Complaint. The proposed plan would distribute the Fair Fund on a *pro rata* basis to harmed investors who purchased or otherwise acquired, including through the two mergers, shares of VEREIT common stock between February 28, 2013, and October 28, 2014, and held such shares through the close of trading on October 28, 2014. (DE 42 at 7.) If the

---

[1]     For clarity, this memorandum will use the term VEREIT to refer to the entity at all times, even though the entity was named ARCP at the time of the conduct alleged in the Complaint.

Court "satisfies itself that the distribution of proceeds . . . is fair and reasonable, its review is at an end." *Official Comm. of Unsecured Creditors of Worldcom, Inc. v. SEC*, 467 F.3d 73, 82 (2d Cir. 2006) (citing *SEC v. Wang*, 944 F.2d 80, 85 (2d Cir. 1991)).

As explained in the Commission's moving papers and below, the Commission's proposed distribution plan is fair and reasonable because these harmed investors were victims of Defendants' violations of the federal securities laws. The investors were misled by misstatements and omissions made not only in the proxy solicitations and registration statements in connection with the two mergers but also made in VEREIT's subsequent public filings through at least the last Form 10-Q report filed prior to an October 29, 2014 announcement of fraud and non-reliance on previously issued financial statements dating back to VEREIT's fiscal year 2013 (the "October 2014 Announcement"). (DE 42 at 9-10.)

The October 2014 Announcement stated that the non-reliance on these previously issued financial statements and other financial information was based on preliminary findings of its investigation into concerns regarding accounting practices and other matters that were reported to the Audit Committee, and that the Chief Financial Officer (Block) and the Chief Accounting Officer had resigned. (*Id.* at 5-6.) While the October 2014 Announcement provided specific information regarding an overstatement of a non-GAAP accounting measure, Adjusted Funds from Operations ("AFFO"), occurring in the first and second quarters of 2014, including that in the second quarter an "error was identified but intentionally not corrected, and other AFFO and financial statement errors were intentionally made," the Audit Committee nevertheless concluded that the fiscal year 2013 financial statements should no longer be relied upon, that it had expanded its investigation to encompass that period in light of the fact that Block and the former Chief Accounting Officer had key roles in the preparation of those financial statements,

and that the investigation is ongoing and there can be no assurance that the potential adjustments discussed would not change based upon the final results of the investigation.. (*Id.* at 10). Following the October 2014 Announcement, VEREIT's market capitalization fell more than $2 billion. (*Id.* at 6.)

In its Objections, VEREIT argues that it is a victim of Defendants' fraud and asserts that $12,313,856—the cash disgorgement and prejudgment interest portion of the Fair Fund— consists "of funds misappropriated from VEREIT"[2] that should be directed to VEREIT instead of harmed VEREIT investors. (*Id.* at 4.) VEREIT further argues that the Supreme Court decision in *Liu v. SEC*, 140 S. Ct. 1936 (2020), alters the Court's review standard and limits the discretion of the Commission to propose a distribution of disgorgement to parties other than VEREIT because traditional equitable principles would have required those funds be returned to the company. The company further contends that the SEC's proposed plan is not fair and reasonable because it excludes certain investors, is *pro rata*, and its cutoff date is purportedly arbitrary. VEREIT's Objections are ill-founded and do not withstand scrutiny under the very cases and equitable principles upon which it relies.

*First*, the Supreme Court decision in *Liu* did not alter the review standard for a proposed distribution plan. The decision did not discuss or change the law regarding how a district court reviews the Commission's proposal of *which* harmed investors should receive distributions from a Fair Fund or how to resolve competing claims among potential recipients. Accordingly, *Liu* has no bearing on the Court's inquiry here.

---

[2]     The total disgorgement awarded by final judgements against the Defendants was $11,275,065. (DE 8, 9, and 11.) The $12,313,856 amount includes prejudgment interest of $1,038,791.

3

*Second*, VEREIT mischaracterizes the Commission's Complaint as alleging schemes in which it is the sole victim of Defendants' violations. To the contrary, the Complaint unquestionably alleges that investors are independent victims from the company, with misstatements and omissions made directly to investors in the VEREIT proxy and registration statements filed in connection with the two mergers, as well as in subsequent public filings by VEREIT. There can be no serious dispute that Defendants' violations of the federal securities laws—provisions designed to protect investors from fraud—victimized VEREIT investors.

*Third,* VEREIT's equitable claim to the Fair Fund—if any—is far weaker than that of harmed VEREIT investors under traditional equitable principles. As an initial matter, the misconduct by Defendants alleged in the Complaint is imputable to VEREIT, as entities can only act through individuals. *See*, *e.g.*, *SEC v. Byers*, 637 F. Supp. 2d 166, 184 (S.D.N.Y. 2009) (the exclusion of parties "involved in the fraudulent scheme when distributions are being made is eminently reasonable and supported by caselaw"). Moreover, as VEREIT implicitly acknowledges in its assertion that it "discovered the conduct charged in this case through an investigation by its Audit Committee" and referred it to the SEC, VEREIT has been aware of the conduct charged in this case since at least March 2015. Yet during a period of years prior to the filing of this action, VEREIT failed to bring any action against its former management. *See, e.g., SEC v. Drexel Burnham Lambert, Inc.,* 956 F. Supp. 503 (S.D.N.Y. 1997) ("Having let 'the government pay[] the bill for the lawsuit, Fischbach is now seeking a windfall. An ancient maxim of equity holds that 'equity aids the vigilant, not those who slumber on their rights.'") (internal citations omitted). Indeed, VEREIT's Board repeatedly refused shareholder demands to bring claims against the Defendants. *See Witchko v. Schorsch*, No. 15-cv-6043 (AKH) (DE 61) (June 9, 2016) (denying VEREIT's motion to dismiss and holding "Plantiffs have shown that the

4

demand refusal letter lacks evidence of an independent and good-faith consideration of the merits of the company's potential claims against the individual defendants."). VEREIT subsequently entered into a global private settlement of consolidated class and derivative actions that released the Defendants from any and all claims it may have had against them in exchange for the contribution of $237.5 million to the class action settlement. As such, VEREIT has already, through settlement, resolved all claims for damages against Defendants in exchange for contribution of $237.5 million and presents no basis to conclude that a distribution of the disgorgement funds would *not* constitute a "windfall" to it.

*Finally*, notwithstanding the above, VEREIT already benefitted from disgorgement in this case, while harmed VEREIT investors have not received any distribution in this case. In addition, VEREIT directed the value of that disgorgement back to defendants by treating it as a contribution by the Defendants valued at approximately $32 million to compensate the class action investor victims. As such, not only has VEREIT already received more than 70% of the amount to which it claims it is entitled from this action, but it also has implicitly accepted the premise of the proposed distribution plan—that the disgorged funds in this action are appropriate to benefit investors harmed following the October 2014 Announcement, a substantially similar class of investors who it now claims have no basis to receive distributions of disgorgement in this action from the Fair Fund.

For these reasons, the Court should overrule VEREIT's Objections and approve the Commission's proposed plan of distribution.

## ADDITIONAL BACKGROUND

The Commission's brief in support of its Motion for Approval sets forth relevant factual background sufficient for the Court to approve its proposed Plan of Distribution. (DE 42 at 1-7.)

Given the arguments raised by VEREIT in its Objection, the SEC provides the following additional background information concerning VEREIT's receipt of an approximate $32 million benefit from the disgorgement of the OP Units in this action and its use of that benefit in a global settlement of a consolidated class action, derivative action, and resolution of all claims it may have had against Defendants.

As part of Defendants' settlement of this case, the Defendants disgorged 2,922,445 OP Units by surrendering them to VEREIT for cancellation pursuant to the consent judgments entered by the Court in July 2019. (*See* DE 8 at § III, and DE 9 and 11 at § V.) Separately, VEREIT and the Defendants have been subject to shareholder class action suits filed after the October 2014 Announcement that were consolidated as *In re American Realty Capital Properties, Inc. Litigation*, No. 15-mc-00040 (AKH), several suits by plaintiffs who opted out of the class action, and shareholder derivative suits consolidated in *Witchko v. Schorsch*, No. 15-cv-6043 (AKH). (*See* DE 42 at 7.)

In September 2019, VEREIT and the Defendants entered into settlement agreements in which, among other things, VEREIT provided complete releases of all claims it may have had against the Defendants in exchange for a contribution of $225 million from AR Capital and Schorsch and $12.5 million from Block.[3] Suthammanont Decl. Ex. A at 3 (VEREIT Form 8-K filed Sept. 8, 2019). As part of these settlement agreements, VEREIT agreed to contribute the approximate value it received from the disgorgement of OP Units in this action on behalf of

---

[3]     While VEREIT claims to have "carved out its right to pursue and retain any amounts paid to the SEC in connection with this action" (Goldberg Decl. (DE 45-1) at ¶ 8), VEREIT has not preserved any claims *against the Defendants* which may have entitled it to any such recovery. The carve out is merely an agreement between VEREIT and the Defendants that the Defendants are not entitled to a *further* offset of their contribution obligation *if* VEREIT receives any amounts from the SEC action. Suthammanont Decl. Ex. B ¶ 7

6

Defendants as a reduction of $31,972,934 of Defendants AR Capital's and Schorsch's $225 million contribution to settle the class action suits. Suthammanont Decl. Ex. B ¶¶ 1 and 7 (settlement agreement between VEREIT and AR Capital, Schorsch, and others); Ex. C. ¶ 1 (side letter to settlement agreement). VEREIT reached a side agreement with Block. Suthammanont Decl. Ex. D (Block side letter). These agreements were all subsequently approved by the Court.

In sum, VEREIT obtained approximately $32 million of value from disgorgement in the SEC consent judgments requiring Defendants to surrender OP Units to it. Soon after, VEREIT agreed to settlements with the Defendants and of the class and derivative actions in which it accepted a $237.5 million contribution from Defendants to the class action settlement to benefit the harmed investor class, offset by VEREIT's contribution of approximately $32 million in cash representing the value of the disgorged OP Units it received through the SEC's settlement, in exchange for providing a complete release to Defendants of all claims the company may have had against them.

## ARGUMENT

### I.   The Proposed Plan of Distribution Is Fair and Reasonable

#### A.   The Applicable Standard of Review Is Whether the Proposed Plan Is Fair and Reasonable and *Liu* Did Not Change It

As set forth in the Motion for Approval, Second Circuit precedent confirms that the Commission has significant discretion to design and establish the parameters of a distribution plan that must be approved if the Court determines that the plan is fair and reasonable. *See*, *e.g.*, *Worldcom*, 467 F.3d at 82 (holding the Court's "review is at an end" if it satisfies itself that a distribution is fair and reasonable). Courts defer to the SEC's expertise in formulating plans of distribution because of its "charge to enforce the securities laws carries with it the discretion to determine how to distribute recovered profits among injured investors." *Id.* at 84. Even fair and

reasonable plans inevitably omit some potential claimants. *Wang*, 944 F.2d at 80, 83-84, 88. The Commission's proposed distribution to harmed investors is fair and reasonable because they were victims of the Defendants' fraud.

VEREIT agrees that the applicable standard of review is a "fair and reasonable" standard. DE 45 at 16. Nevertheless, VEREIT argues that the SEC's reliance on *Wang*, 944 F.2d at 83-84, 88, and *SEC v. Levine*, 991 F.2d 1165 (2d Cir. 1989), "two decades-old cases" is misplaced in light of "modern doctrine[.]" as it pertains to "line-drawing—which inevitably leaves out some potential claimants—[being] … appropriately left to the experience and expertise of the SEC in the first instance." (Objections at 13 (quoting *Wang*, 944 F.2d at 83-84, 88).) Yet nowhere does VEREIT cite any case law calling into question that the "fair and reasonable" standard permits the SEC to engage in such line-drawing. The Second Circuit's 2006 decision in *Worldcom* fully endorsed that "[s]o long as the district court is satisfied that 'in the aggregate, the plan is equitable and reasonable,' the SEC may engage in the 'kind of line-drawing [that] inevitably leaves out some potential claimants.'" *See Worldcom*, 467 F.3d at 82-83 (quoting *Wang,* 944 F.2d at 88); *see also SEC v. Amerindo Inv. Advisors*, 639 F. App'x 752, 755 (2d Cir. 2016) (per curiam).

Further, VEREIT does not explain what the purported "new" standard is or should be. This is because there is no change in the long-standing law in this area, and VEREIT ignores a twenty-year history of district court orders that rely on *Wang* in applying a fair-and-reasonable standard in approving proposed distribution plans by the SEC that engage in line drawing. *See*, *e.g.*, *SEC v. McGinn, Smith & Co., Inc.*, No. 10 Civ. 457, 2019 WL 1060650, *2 (S.D.N.Y. March 6, 2019) (approving receivership distribution plan that excluded certain claimants); *SEC v. CR Intrinsic Investors, LLC*, 164 F. Supp. 3d 433, 435 (S.D.N.Y. 2016) (approving a

8

distribution plan that pools separate groups of investor recoveries and includes types of securities not traded by the defendants); *In re Reserve Fund Secs. & Derivative Litig.*, 673 F. Supp. 2d 182, 195 (S.D.N.Y. 2009) (approving pro rata distribution plan over objections in light of facts of that case); *Byers*, 637 F. Supp. 2d at 174-75 ("The SEC's judgment is entitled to deference from this Court."). The closest VEREIT comes to articulating a new test is when it states that "the Court's task in this matter is to determine the appropriate beneficiary" of the disgorgement paid by Defendants. (Objections at 19.) In fact, however, the Second Circuit rejected that role for courts, noting in *Wang* that, "[w]ere we drafting the Plan, we might well have decided" to draft a different plan, but nevertheless approving the SEC plan because it was fair and reasonable. 944 F.2d at 88; *see also SEC v. Worldcom, Inc.,* No. 02 Civ. 4963, 2004 WL 1621185, at *1 (S.D.N.Y. July 20, 2004) ("When funds are limited, hard choices must be made. Although a plan that included each of these excluded groups might also pass muster, the decision to exclude them was a fair and reasonable exercise of the Commission's discretion."), *aff'd*, 467 F.3d 73 (2d Cir. 2006). So long as the Commission proposed a fair and reasonable distribution, the Court can approve it—even if there are other fair and reasonable methods of distribution.

The cases cited by VEREIT in which courts have rejected or altered proposed distribution plans do not call this standard—or the discretion afforded to the SEC—into question, and each involves unique and readily distinguishable facts. In *SEC v. J.P. Morgan Securities LLC*, the district court initially rejected the SEC's proposed plan because it did not comply with a provision *in the consent judgment* requiring the SEC to consult with the Internal Revenue Service. No. 12 Civ. 1862, 2017 WL 44209, *5-6 (D.D.C. Jan. 4, 2017). Not only does no such term apply here, but the court in that case expressly noted that, in a revised plan, it "may, after all, be the case that the Investors asserted inequities are simply the result of the prototypical

9

'line-drawing' that occurs in Fair Fund distributions." *Id.* (citing *Worldcom*, 467 F.3d at 83 (quoting *Wang*, 944 F.2d at 88)). Moreover, the court in that case ultimately approved the SEC's revised proposal, under which the objector still did not recover. *See SEC v. J.P. Morgan Secs. LLC,* 266 F. Supp.3 d 225 (D.D.C. 2017). In *SEC v. Felix Investments, LLC*, the district court— again using the fair-and-reasonable standard—approved the receivership distribution plan with modifications noting the "unusual nature of this case" and that, unlike cases where investors will likely not be made whole, the claimants in that case "can still be made largely whole." 16 Civ. 1386, 2018 WL 6706038, *4-5 (N.D. Cal. Dec. 20, 2018). Nothing in the reasoning of either case suggests that they are applicable to the facts and circumstances here, or that they applied anything other than the *Worldcom* standard of review.

    VEREIT's reliance on *Liu* is also unavailing. The Supreme Court decision in *Liu* affirmed the SEC's authority to seek disgorgement that "'may be appropriate or necessary for the benefit of investors[.]" 140 S. Ct. at 1942. *Liu* stated that "[t]he equitable nature of the profits remedy generally requires the SEC to return a defendant's gains to wronged investors for their benefit," *id.* at 1948, and it left open the question of how to handle disgorgement when it is infeasible to distribute the disgorgement to investors. *Id.* at 1947-49. But *Liu* did not address or alter the law for plans to distribute proceeds to investors—the Court did not discuss how courts should determine which victims should receive funds or the method of determining allocations of amounts that may be far less than the harm incurred by victims. Further, nothing in *Liu* addressed—much less changed—the standard of review that courts apply when assessing the SEC's discretion to formulate plans of distribution in its cases. As such, nothing in *Liu* calls into question the longstanding precedent establishing that a court must approve a proposed

distribution plan if it is fair and reasonable. Moreover, even if it did, the Commission's plan is consistent with equitable principles as explained in the Commission's moving papers and below.

### B. It Is Fair and Reasonable to Distribute the Fair Fund, Including Disgorgement, to the Investor Victims Specified in the Proposed Distribution Plan

A distribution of the Fair Fund, which includes the cash disgorgement amounts, to investor victims would be fair and reasonable for the reasons set forth in the SEC's moving brief (DE 42 at 9-13). In sum, the investor victims were misled by Defendants' fraudulent conduct when they purchased or otherwise acquired VEREIT shares in light of Defendants' fraudulent misrepresentations and omissions made in connection with the mergers of VEREIT with American Realty Capital Trust III, Inc. ("T3") and American Realty Capital Trust IV, Inc. ("T4'), whether at the time of the mergers or later during the periods when VEREIT continuously made misrepresentations in subsequent public filings. (DE 42 at 9-10.) VEREIT's Objections to the determination that investors were victims of Defendants' fraud are baseless.

First, contrary to VEREIT's characterization, the SEC is not seeking to "pierce the corporate veil[.]" (Objections at 20.) The investor victims are independent victims from the company as alleged in the Complaint, and misstatements were made directly to them. (*See, e.g.*, DE 1 ¶¶ 29-47 (manipulation of T3 promote fee calculation "benefitted Defendants at the expense of shareholders of the post-merger ARCP"); 53 (calculation manipulation "at the expense of ARCP and its shareholders"); 60 (describing misrepresentations to shareholders in public filings); 72 ("Defendants' unauthorized actions [regarding T4 promote fee calculation] were not disclosed to the boards and shareholders."); 76 (omissions from boards and "shareholders"); 77-79 (misstatements in public filing); 85-89 (misstatements concerning the FF&E Agreements in public filings). The Complaint also alleged, for example, that the Defendants owed a fiduciary duty directly to the shareholders of the merging entities and that

11

their manipulation of the promote fees benefited them at the expense of shareholders. (*Id.* ¶¶ 23, 24, 42, 47, and 53.) There can be no serious dispute that VEREIT investors were harmed by the conduct alleged in the Complaint that constituted violations of the federal securities laws— provisions designed to protect investors from fraud. Indeed, even accepting VEREIT's characterization of the misconduct as corporate embezzlement, VEREIT acknowledges that "misconduct—such as corporate embezzlement and other forms of undisclosed fiduciary breach—deceive[s] many different parties, such as the board of directors of the victim, shareholders, bondholders, regulators, and the public." (DE 45 at 19.) But such misconduct is actionable under the federal securities laws here because misstatements and omissions were made to investors in the VEREIT proxy and registration statements filed in connection with the two mergers—in which T3 and T4 shareholders were required to vote to approve the mergers and received VEREIT stock—as well as in the active market for VEREIT stock when further misrepresentations and omissions were made in subsequent public filings by VEREIT.[4] Accordingly, the investors' victimhood is not derivative of the company's claims.

Second, VEREIT's objections concerning the various classes of potential shareholders who would not recover under the *pro rata* distribution of funds in the proposed distribution plan are without merit. (Objections 20-22.) VEREIT has no interest in which shareholders receive a distribution or how that distribution is calculated. Indeed, no shareholder—whether eligible for a distribution or not—objected to the proposed plan. As the district court in *SEC v. Worldcom* noted, "[w]hen funds are limited, hard choices must be made." 2004 WL 1621185, at *2. Such a

---

[4]     Contrary to the implication of VEREIT's assertions, while the Complaint did not allege a violation of Section 14 of the Exchange Act, the Complaint certainly alleged fraud in connection with proxy disclosures to shareholders that violated Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act.

choice was made with respect to investors who may have owned VEREIT stock prior to February 28, 2013, but did not purchase or otherwise acquire VEREIT stock during specified relevant period (*see* Objections 21-22), and therefore, under existing securities law, could not bring a securities fraud claim directly against VEREIT. *See id.* ("[I]t can hardly be unfair to exclude a group that, under existing securities law, could not even bring a securities fraud claim directly against [the issuer].") (citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975)). As to the calculation method for distribution—that it be *pro rata* and use the October 28, 2014 cutoff date—both are fair and equitable as set forth in the brief in support of the Motion for Approval. (DE 42 at 10-11, 13.) Courts routinely approve *pro rata* distributions where investments and fraud occur over time without regard to the timing of such investments. *See*, *e.g.*, *J.P. Morgan Secs.*, 266 F. Supp. 3d at 232 ("as Defendants' conduct affected all initial purchasing decisions, *pro rata* disbursement is a fair and reasonable way to proceed."); *Byers*, 637 F. Supp. 2d 166 (approving *pro rata* distribution "that draws no distinctions among investors").

In addition, contrary to VEREIT's assertion that the proposed distribution plan selected the dates February 28, 2013, through October 28, 2014, to coincide with the class action period, the dates were selected for the reasons stated in the SEC's moving brief. Specifically, February 28, 2013, was the date of the closing of the T3 merger, as well as filings by VEREIT containing false and misleading statements concerning the merger. Indeed, permitting T3 shareholders who acquired VEREIT shares in the merger to recover is expressly at odds with the class period. Selecting October 28, 2014 as the cutoff date is not arbitrary as explained in the SEC's moving brief. (DE 42 at 13-14.) October 28, 2014, was the date prior to the day VEREIT made the October 2014 Announcement that caused a greater than $2 billion market-capitalization loss,

included disclosures indicating fraudulent intentional conduct by Block raising issues of the

integrity of VEREIT's senior management and, based on Block's involvement in their

preparation, non-reliance on prior financial statements spanning approximately the same time

period of the violations alleged in the SEC Complaint in this action. While the October 2014

Announcement was not the only relevant disclosure concerning the frauds alleged in the

Complaint, where limited funds are available for distribution relative to victim harm, it is fair

and reasonable to select the earliest disclosure date as a cutoff. *See, e.g., J.P. Morgan Secs.,* 266

F. Supp. 3d at 233 ("[T]he point is not to measure when precisely the full details of Defendants'

conduct was revealed, but to ascertain a reasonable point in time when non-disclosures had

significantly less effect on new investment decisions.").

C.     **A Distribution of the Disgorgement Component of the Fair
       Fund to VEREIT Would Be Inequitable Under the
       Circumstances**

While a distribution of the Fair Fund to investors would be equitable for the reasons

stated in the Commission's moving papers and above, as an initial matter, a distribution to

VEREIT would be inequitable in light of the limited funds available for distribution. It would

benefit VEREIT's current investors (some of whom may have purchased at discounted prices

after VEREIT's fraud was disclosed) at the expense of investors who acquired shares at higher

prices produced by Defendants' frauds and who have received no distribution from the

Commission's action. A distribution to VEREIT would also be inequitable because VEREIT was

a party to Defendants' fraud, because it failed to bring a claim against Defendants, and because it

has now settled with complete releases to Defendants.

1.   *Defendants' Fraud is Imputable to VEREIT*

Case law supports the exclusion from equitable distributions of parties that were involved

in fraudulent schemes. *See*, *e.g.*, *Byers*, 637 F. Supp. 2d at 184 (disqualifying parties involved in

14

fraud); *SEC v. Bivona*, No. 16 Civ. 1386, 2017 WL 4022485, *14 (N.D. Cal. Sept. 13, 2017)

("the cases support . . . complete exclusion of active wrongdoers" and those who profit from

fraud). Such exclusions are equitable. *SEC v. Credit Bancorp, Ltd.*, No. 99 Civ. 11395, 2000 WL

1752979, *35, n.48 (S.D.N.Y. Nov. 29, 2000) (the doctrine of "unclean hands . . . would be a

relevant consideration in equity."), *aff'd*, 290 F.3d 80 (2d Cir. 2002). It is not necessary for

VEREIT to have been charged by the SEC for it to be excluded from a plan of distribution. *See*,

*e.g.*, *Byers*, 637 F. Supp. 2d at 184 (discussing process for excluding uncharged parties involved

with the fraud); *Bivona*, 2017 WL 4022485, *14 (exclusion of persons involved in fraud

permitted "even when the claimant did not knowingly engage in unlawful, wrongful, or criminal

conduct."). Although not charged by the SEC in this case, VEREIT, as a corporation that can act

only through individuals such as the Defendants who were the manager and senior officers of the

company, was involved in—if not a party—to Defendants' frauds.

Defendant Schorsch was the Chief Executive Officer and Chairman of VEREIT, T3, and

T4, and Defendant Block was the Chief Financial Officer of each. (DE 1 ¶¶ 11-12.) AR Capital

was VEREIT's external manager through January 8, 2014, and the external manager of T3 and

T4 through the date of their respective mergers with VEREIT. (*Id.* ¶ 13.) Defendants, in their

capacities as manager and the most senior officers of VEREIT and the two merging entities,

made the misrepresentations and omissions that are the subject of the Complaint in VEREIT's

public filings concerning the T3 and T4 promote fee calculations and the FF&E Agreements.

(DE 1 ¶¶ 57-60, 77-79, 85-90.) Defendants, in their capacities as manager and the most senior

officers of VEREIT, also falsified VEREIT's books and records to conceal the fraud. (*Id.* ¶ 94-

96.) Contrary to the characterization by VEREIT, the books and records violations by

Defendants were not violations *against* VEREIT, but rather violations that *cause* an issuer like

VEREIT to itself violate the requirement for an issuer to make and keep accurate books and records. *See* 15 U.S.C. § 78m(b)(2)(A).

In other words, Defendants did not act as separate external forces apart from VEREIT—they did so on behalf of VEREIT in the capacities that VEREIT chose to structure its management, which caused harm to investors and can be imputed to VEREIT. Accordingly, traditional equitable principles would limit or prevent VEREIT from recovering the cash disgorgement paid by Defendants.

Moreover, despite VEREIT's implicit acknowledgement that it has been aware of the conduct charged in this case since at least March 2015, VEREIT determined not to bring an action against its former management, despite receiving shareholder demands to do so. *Cf. Drexel Burnham Lambert,* 956 F. Supp. 503 ("The fact that the SEC had already brought this action does not excuse Fischbach's failure to act. The SEC does not seek to vindicate discrete private rights, and an SEC action does not preclude private parties from bringing their own action. Having let 'the government pay[] the bill for the lawsuit, Fischbach is now seeking a windfall. An ancient maxim of equity holds that 'equity aids the vigilant, not those who slumber on their rights.'") (internal citations omitted). Indeed, VEREIT's Board repeatedly refused shareholder demands to bring claims against the Defendants, and the court in the consolidated shareholder derivative action refused VEREIT's request to dismiss the action. *See Witchko v. Schorsch*, No. 15-cv-6043 (AKH) (DE 61) (June 9, 2016) (denying VEREIT's motion to dismiss and holding "Plaintiffs have shown that the demand refusal letter lacks evidence of an independent and good-faith consideration of the merits of the company's potential claims against the individual defendants.").

16

The settled cases cited by VEREIT in support of returning funds to corporate victims (Objections 15-16) do not demonstrate that the Commission *must* make such distributions to corporate issuers, and they do not reflect judgments of the Commission that corporate issuers were the sole victims of the alleged violations. In every case, there are many equitable factors that are considered in reaching a proposed distribution plan that is fair and reasonable based on the particular facts and circumstances. And some cases present "hard choices." For instance, if no class of harmed investors can be identified, or the potentially available funds for distribution would not be sufficient to make a meaningful distribution to potentially harmed investors, directing the payment to the issuer may be an equitable outcome. That is not the case here.

Further, the settled cases cited by VEREIT reinforce two principles contrary to its contentions: that consent judgments may reflect a negotiated agreement that directs the payment to an issuer, as the consent judgments did in this instance in part by requiring Defendants to surrender OP Units to VEREIT for cancellation; and that it is the Commission's decision as to whether to propose such an outcome in the first instance. The fact that VEREIT can trace the disgorgement to cash it paid pursuant to the FF&E Agreements or as dividends on the OP Units does not avail it. While a court may allow such tracing, "there is no entitlement" to such an approach in equity, and many courts have disallowed tracing in favor of a *pro rata* approach. *E.g.*, *Credit Bancorp*, 2000 WL 1752929, *14 (collecting cases), *aff'd*, 290 F.3d at 88-89 (approving pro rata distribution to investors despite that disgorged securities were traceable to specific investors). Tracing particularly should not be permitted as the method here, where VEREIT was the corporate entity obligated under the federal securities laws to make full and fair disclosure to investors and instead, through the actions of Defendants, misrepresented to

17

investors the purported legitimacy and entitlement of Defendants to the FF&E payments and

dividends on the OP units among other things.[5]

### 2.  *VEREIT Already Benefitted from Disgorgement in this Case*

Pursuant to the final judgments in this action, Defendants surrendered 2,922,445 OP

Units to VEREIT for cancellation. (*See* DE 8 at § III, and DE 9 and 11 at § V.) The purpose of

this disgorgement was to deprive the wrongdoers of their ill-gotten gains. *See Liu*, 140 S. Ct. at

1942-43. The disgorgement of the OP Units by surrender to VEREIT for cancellation was both

the result of a negotiated agreement with Defendants as well as a practical outcome: it

effectuated the primary purpose of disgorgement by depriving Defendants of their ill-gotten

gains, which had remained since their issuance in the form of OP Units that were subject to

certain conversion restrictions. Defendants' offer of settlement included this mechanism, which

the Commission determined to accept, and the Court entered as part of the consent judgments.

No such provision was negotiated or agreed to in connection with the cash disgorgement and

prejudgment interest. *Cf. Levine*, 881 F.2d at 1183 ("If a defendant wishes to ensure that a certain

class of claims will be paid out of funds to be disgorged in settlement of an action against him,

---

[5]       The distribution proposed here is similar to that in *SEC v. Brant*, No 07 Civ. 1075 (DLC) (S.D.N.Y.). In that case, Brant settled charges arising from a stock options backdating scheme at Take-Two Interactive Software, Inc. ("Take-Two"). Suthammanont Decl. Ex. E at 2 (SEC's Mem. of Law in Support of Its Motion to Establish a Fair Fund and to Distribute It to Shareholders Jointly with a Distribution in a Pending Class Action (DE 27)). Although , on the same basis as claimed by VEREIT, Take-Two could potentially have been considered a victim of the scheme (by its CEO and Chairman Brant), the SEC initially proposed that the disgorgement, prejudgment interest, and penalty be turned over to the Treasury. *Id.* After harmed investors notified the SEC of their intention to intervene and made a presentation demonstrating that the funds could be distributed to investors, the SEC proposed a distribution to shareholders, *id.* at 3, and the court approved. Suthammanont Decl. Ex. F (Order Establishing a Fair Fund, Approving a Distribution Jointly with a Class Action, and Preliminarily Approving the Proposed Plan of Allocation (DE 29)).

he is free to insist in negotiations that such a provision be included in the consent and judgment and is free not to agree to the judgment if the desired provision is not included.").

VEREIT and Defendants valued VEREIT's receipt of the disgorged OP Units at $31,972,934.[6] Suthammanont Decl. Ex. B ¶ 7. As part of the class action settlement and in exchange for a complete release of claims by VEREIT, Defendants agreed to contribute $237.5 million to the $1.025 billion settlement fund, which VEREIT agreed to offset by contributing the approximately $32 million on Defendants' behalf which was "inclusive of the value of substantially all of the OP units" surrendered to VEREIT as a result of the SEC settlement.

Simply stated, VEREIT already obtained an approximate $32 million value from the disgorgement that it received in the Commission's action—more than 70% of the amount to which it claims it is entitled in this action. In contrast, VEREIT shareholders have received no compensation from the SEC's action, while incurring more than $2 billion in losses as a result of VEREIT's misconduct.

Moreover, by offsetting the Defendants' contribution to the class action settlement by the disgorgement, VEREIT contradicted its position objecting to the equitable distribution the SEC proposes. Specifically, VEREIT, by using the OP Unit disgorgement to pay investor victims of a class similar to that which the Commission proposes distributing the Fair Fund, effectively acknowledges that harmed investors are the proper recipients of the disgorgement in this case in

---

[6]     There were two pools of dividends attributable to the 2,922,445 OP Units surrendered to VEREIT. First, between 2015 and 2019, approximately $6.4 million of dividends were payable on the OP Units, but VEREIT withheld payment of those dividends from Defendants. Pursuant to the Court's judgments in this case, Defendants relinquished "all legal and equitable right, title, and interest" in the OP Units. (*See* DE 8 at § III, and DE 9 and 11 at § V.) Part of the $32 million valuation included the $6.4 million in withheld dividends. (See DE 45-1 ¶ 23.) Prior to that, between 2013 and 2014, Defendants received $4,000,859 in dividends on those OP Units, and Defendants paid cash disgorgement of that amount as part of the settled final judgments with the Commission, which are part of the Fair Fund.

light of their massive losses. Further, by funding a cash payment on behalf of the Defendants for value of the disgorged OP Units plus withheld dividends on those units, VEREIT appears to have returned to Defendants the benefit of the ill-gotten gains they were ordered to disgorge in the SEC's settlement with Defendants.

## CONCLUSION

The proposed plan of distribution was devised by the Commission pursuant to its statutory duties and was designed to equitably distribute the Fair Fund to harmed investors *pro rata* in relation to the massive losses they incurred due to Defendants' frauds. The Commission factored into its consideration of the proposed distribution that, among other things, there is a class of severely harmed investors who can be identified and were victims of Defendants' violations; there are sufficient funds to feasibly make a meaningful distribution to such harmed investors; in comparative equities to harmed shareholders, Defendants' misconduct is imputable to VEREIT and was directed at VEREIT shareholders; VEREIT made a decision over the course of years not to seek timely redress from its former management to recover the funds that it now claims; VEREIT already received an approximate $32 million benefit distributed to it from this case while shareholders have not received any compensation from this case; and VEREIT already provided a complete release of any and all claims it may have had against Defendants in exchange for a $237.5 million contribution. Courts review proposed plans of distribution for fairness and reasonableness and, due to the Commission's expertise in fulfilling its statutory duties as it does here, approve such plans provided they are fair and reasonable notwithstanding that other fair and reasonable distribution schemes could be devised. Nothing the Supreme Court wrote in *Liu* changes these principles or their application in this case. Approval of the

Commission's proposed plan of distribution would be fully within the Court's authority to grant

"any equitable relief that may be appropriate or necessary for the benefit of investors."

For the forgoing reasons, the Commission respectfully requests that the Court overrule

VEREIT's objections and grant its Motion for Approval of the proposed plan of distribution.

Dated: New York, New York
      November 6, 2020

                __/s/ Victor Suthammanont_____
                Victor Suthammanont
                Nancy A. Brown
                Wendy B. Tepperman
                Attorneys for Plaintiff
                SECURITIES AND EXCHANGE
                COMMISSION
                New York Regional Office
                200 Vesey Street, Suite 400
                New York, New York 10281
                (212) 336-5674 (Suthammanont)
                SuthammanontV@sec.gov

                Nancy Chase Burton
                Nichola L. Timmons
                SECURITIES AND EXCHANGE
                COMMISSION
                100 F Street, N.E.
                Washington, DC 20549-5631
                (202) 551-4425 (Burton)
                burtonn@sec.gov